**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Walsh,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>　　　　Defendant. | No. CV-22-01307-PHX-SPL<br><br>**ORDER** |

Plaintiff challenges the denial of her applications for Disability Insurance Benefits ("DIB") and Disabled Widow's Benefits ("DWB") under Title II of the Social Security Act ("the Act") by Defendant, the Commissioner of the Social Security Administration ("Commissioner" or "Defendant"). Plaintiff exhausted administrative remedies and filed a Complaint seeking judicial review of the denials. (Doc. 1.) The Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having reviewed Plaintiff's Opening Brief (Doc. 17, "Pl. Br."), Defendant's Answering Brief (Doc. 18, "Def. Br."), Plaintiff's Reply (Doc. 19, "Reply"), and the Administrative Record (Doc. 11, "AR."), the Court affirms the Commissioner's unfavorable decision.

**I.     THE SEQUENTIAL EVALUATION PROCESS AND JUDICIAL REVIEW**

To determine whether a claimant is disabled for purposes of the Act, the Administrative Law Judge ("ALJ") follows a five-step sequential evaluation process. *E.g.*, 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094,

1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial, gainful work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in disqualifying work, she is not disabled. *Id*. If she is not engaged in such work, the analysis proceeds to step two, where the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If the claimant has no such impairment, she is not disabled. *Id*. If she does, the analysis proceeds to step three, where the ALJ considers whether the claimant's impairment or combination of impairments meets or is medically equivalent to an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id*. If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four,[1] where the ALJ determines whether the claimant is still capable of performing her past relevant work. *Id*. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. *Id*. If she cannot, the analysis proceeds to the fifth and final step, where the ALJ determines if the claimant can perform any other work in the national economy based on her RFC, age, education, and work experience. *Id*. § 404.1520(a)(4)(v). If the claimant cannot perform any other work, she is disabled. *Id*.

The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up). In determining whether substantial evidence supports a decision, the court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (cleaned up). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

---

[1] The "residual functional capacity is the most [the claimant] can still do despite [her] limitations." *Id*. § 404.1545(a)(1).

## II. PROCEDURAL HISTORY

Plaintiff filed applications for benefits on May 15, 2013 alleging disability beginning August 21, 2010. (AR. at 206-10). Her applications were denied at the initial and reconsideration phases of administrative review (AR. at 144-48, 155-60), and a hearing was held on December 17, 2014 before ALJ Patricia Bucci ("ALJ Bucci"). (AR. at 47-65.) ALJ Bucci issued an unfavorable decision on February 23, 2015. (AR. at 18-43.) The Appeals Council upheld the unfavorable decision on review (AR. at 1-7), and the Plaintiff filed a civil action in this Court on December 4, 2015. (AR. at 760-64.) While that civil action was pending, Plaintiff filed a subsequent application for benefits alleging disability beginning February 24, 2015—the day after ALJ Bucci's prior decision. (AR. at 828.) On March 27, 2017, this Court, Hon. G. Murray Snow presiding, remanded Plaintiff's May 2013 applications for additional proceedings, finding that the ALJ erred by concluding the Plaintiff's physical impairments were not severe at step two of the sequential evaluation. (AR. at 765-83.) While Plaintiff's initial applications were still pending on remand, ALJ Ted Armbruster ("ALJ Armbruster") awarded Plaintiff's second application, finding her disabled effective February 24, 2015. (AR. at 828-32.) ALJ Armbruster found Plaintiff would be off-task for 11% or more of a normal workday and would miss two days of work per month. (AR. at 829.) ALJ Armbruster found the opinions of Plaintiff's treating physicians to be consistent with the record. (AR. at 830.)

On November 6, 2019, pursuant to this Court's remand order, ALJ Bucci held a second hearing on Plaintiff's May 2013 applications. (AR. at 699-723.) ALJ Bucci again denied these applications in a written decision dated December 3, 2019. (AR. at 677-96.) The Appeals Council affirmed (AR. at 658-64), and the Plaintiff filed this civil action on August 4, 2022. (Doc. 1.)

## III. DISCUSSION

Plaintiff raises six issues: (1) whether the ALJ erred by failing to explain why res judicata did not apply retroactively (Pl. Br. at 11-13); (2) whether the ALJ erred in assessing Plaintiff's RFC (Pl. Br. at 13-14); (3) whether the ALJ erred by rejecting the

opinions of Plaintiff's treating family physician, Dr. Motsch (Pl. Br. at 14-19); (4) whether the ALJ erred by rejecting the opinions of Plaintiff's treating physicians, Drs. Hawk and Fierro (Pl. Br. at 19-24); (5) whether the ALJ erred by failing to address the assessment of Dr. Hill and LAC Luna who determined Plaintiff met the criteria for Seriously Mentally Ill ("SMI") status (Pl. Br. at 24-26); and (6) whether the ALJ erred by failing to cite specific evidence supporting his decision to partially reject the opinions of the non-examining doctors (Pl. Br. at 26-28). The Court finds no error and affirms the ALJ decision.

**A.     The ALJ did not err by failing to discuss res judicata.**

The doctrine of res judicata applies to Social Security proceedings, although "less rigidly" than in the judicial context. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988). An ALJ's determination that an individual is not disabled creates a presumption of continuing non-disability after that date, which the Plaintiff can overcome on a subsequent application by producing evidence of "changed circumstances indicating a greater disability." *Id*. (quotations and citations omitted). Plaintiff argues the ALJ was required to determine whether her disabling restrictions and limitations as of February 24, 2015 "relate back to the earlier period of alleged disability[]" from August 21, 2010 to February 23, 2015. (Pl. Br. at 12.) Plaintiff notes that several of her treating physicians from this period assigned the same disabling limitations ALJ Armbruster later adopted to conclude Plaintiff was disabled, and that "it was incumbent upon [ALJ Bucci] to explicitly explain why limitations in existence as of February 24, 2015 were not in existence as of February 23, 2015 and prior." (Pl. Br. at 12.) Plaintiff argues "the ALJ offered only general conclusions, stating that the medical opinions attesting to [Plaintiff's disabling] limitations were on checkbox forms, vague, non-specific or unsupported[]" and that this analysis is insufficient. (Pl. Br. at 12.) She notes the limitations ALJ Bucci concluded were vague were the same limitations that ALJ Armbruster later adopted. (Pl. Br. at 13.)

While Plaintiff argues the ALJ erred by failing to explain why her disabling limitations did not exist earlier, ALJ Bucci—with full knowledge of the later award— evaluated the evidence and issued a 13-page decision explaining why Plaintiff was not

disabled before February 24, 2015. (AR. at 677-96.)[2] She determined Plaintiff's symptom testimony and the opinions of her treating physicians were not supported during that period. (AR. at 683-87.) The merits of these findings, to the extent Plaintiff challenges them, are addressed further below in Sections III(C)-(F).

To the extent Plaintiff is arguing that res judicata operates to support a disability finding on an earlier date, Counsel cites no authority directly supporting the proposition that an award on a second application for benefits is probative of an earlier period for which the claimant has already been denied. In *Lester v. Chater*, upon which Plaintiff relies, the Court merely found that the prior determination of non-disability did not bar a second claim for benefits covering a later period when the Plaintiff showed "changed circumstances," such as a change in age categories and the existence of new impairments not previously considered. 81 F.3d 821, 827-28 (9th Cir. 1995), *as amended* (Apr. 9, 1996) (superseded by regulation on other grounds as stated in *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022)). The circumstances here are much different: here, the administration initially denied Plaintiff's claim, then awarded her second claim for a later period. (AR. at 18-43, 824-32.) Under *Lester*, res judicata would have barred Plaintiff's second claim if she could not show the requisite changed circumstances to overcome the presumption of continuing non-disability. *See* 81 F.3d at 827-28. The fact Plaintiff evidently showed changed circumstances illustrates why res judicata is inapplicable here: the facts of each time period are sufficiently distinct.

In *Smith*, which Plaintiff also cites, the Court discussed how medical opinions post-dating the relevant period are still relevant to the issue of disability during the relevant period. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). But the fact of Plaintiff's disability on a later date is not necessarily evidence of disability on an earlier date, as Plaintiff had to allege a greater disability on her subsequent applications. *Chavez*, 844 F.2d at 693. As noted above, the ALJ addressed the medical and opinion evidence at issue during

---

[2] At the November 6, 2019 hearing, the ALJ stated, "[Claimant was] approved for benefits beginning February 25, 2015, I believe, or 24th. So, anyway, the only issue, the only period of time that I'm looking for is August 21, 2010, to February of 2015." (AR. at 699.)

the period under review. Defendant persuasively relies upon *Bruton v. Massanari*, (Def. Br. at 4, citing 268 F.3d 824, 827 (9th Cir. 2001), which the Court finds applicable.

In *Bruton*, a claimant for benefits who had been denied on his first application but awarded on his second, argued that the District Court erred by denying his motion to remand considering the later award. *Id*. The Court reasoned the second application involved different evidence, a different time period, and a different age category. *Id*. "For these reasons," the Court explained, "the second ALJ's subsequent decision to award benefits . . . is not inconsistent with the first ALJ's denial of Bruton's initial application." *Id*. The case presented here is similar. ALJ Armbruster's allowance of benefits effective February 24, 2015 was based upon different evidence and covered a new time period. (AR. at 830, 832.) Of note, Plaintiff was psychiatrically hospitalized in March 2015. (AR. at 830.) The changed circumstances and new evidence led to a different result, of which ALJ Bucci was aware, and ALJ Bucci did not err by failing to explicitly address res judicata in the December 3, 2019 unfavorable decision.

**B.     Plaintiff's RFC is not work-preclusive.**

In the December 2019 unfavorable decision, ALJ Bucci determined Plaintiff's RFC included the ability to "perform routine work requiring simple judgment that could be learned by demonstration within 30 days, tolerate occasional changes in the work setting, [ ]work at an average pace. . . have minimal in person interaction with the public and no working in tandem with co-workers." (AR. at 682.) At the November 2019 hearing, the VE testified that, with these limitations, it is "very possible that the job of a warehouse worker would still be available[,]" and that other work would also be available, such as kitchen helper or dishwasher, groundskeeper, and industrial cleaner. (AR. at 720.) Plaintiff's counsel and the VE then had the following exchange regarding the vocational impact of Plaintiff's social limitations:

> Counsel: I just had a question on that first hypothetical where there was no work in tandem with coworkers and minimal public contact. If we talk about working in tandem with coworkers and then add that or make an assumption that the individual wouldn't be able to work with supervisors, and would have difficulty dealing with criticism from supervisors,

would that preclude sustained work?

VE: Generally, in unskilled jobs one is directly involved with a supervisor for perhaps as long as the first week until the task is learned. And then after that, they don't have a lot of contact with supervisors. But nonetheless, if – if one were unable to even work long enough with someone in charge to learn the task, it would eliminate them.

Counsel: Okay, So, just so I understand. If the no work in tandem with coworkers included no work in tandem with supervisors as well, then the individual would be unable to sustain a competitive work pace and learn a new job. Is that correct?

VE: That would be correct, yes.

Counsel: Okay. I don't have any other questions, Your Honor.

(AR. at 721.) ALJ Bucci later adopted the VE's testimony Plaintiff could perform work with the limitations from the hypothetical. (AR. at 688.)

Plaintiff argues "the ALJ's RFC assessment is not consistent with sustained full time work[,]" because the VE "opined that the assessed limitations would not allow for past work and would preclude all work, as a supervisor is a co-worker." (Pl. Br. at 13.) Plaintiff asserts "[a]ll of the reasons on which the ALJ found no tandem work with co-workers applies equally to supervisors." (Pl. Br. at 14.) Plaintiff also produces "DOL data" showing the jobs identified "include tandem work with non-supervisors." (Pl. Br. at 13.) Plaintiff summarily asserts that "[t]he ALJ violated the best evidence rule[]" by failing to produce the vocational data supporting her findings in response to Counsel's requests. (Pl. Br. at 14.)[3]

---

[3] Plaintiff cites *Biestek v. Berryhill*, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019) apparently for the proposition that the ALJ should have had the VE produce the vocational data underlying her opinion. (Pl. Br. at 14.) Assuming that was Plaintiff's intent, that was not *Biestek's* holding. While the Court noted that producing the supportive data in those instances "would be a best practice[,]" *id.* at 1155, the Court later explained, "[e]ven though the applicant might wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold. The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Id.* at 1157. Plaintiff does not adequately explain why the VE's testimony here, standing alone, does not constitute substantial evidence. In fact, Plaintiff's argument the RFC is disabling is premised in part on accepting the VE's testimony that an individual with Plaintiff's limitations could not work, assuming no tandem work with coworkers included no tandem work with supervisors. (Pl. Br. at 13-14.)

- 7 -

As the transcript makes clear, the VE never testified that "no working in tandem with co-workers" was work preclusive. The VE testified that *if* the term coworkers included supervisors, and *if* the hypothetical individual could not tolerate working alongside a supervisor long enough to learn the task, then work would be precluded. (AR. at 721.) Plaintiff assumes that the terms coworkers and supervisors overlap, but this clearly was not the ALJ's meaning.

As for the Plaintiff's attached O*Net data, conflicting O*Net data "does not necessarily establish either legal error or a lack of substantial evidence to support the ALJ's disability determination." *Terry v. Saul*, 998 F.3d 1010, 1013 (9th Cir. 2021). This is because a VE's "unchallenged expertise" and reference to the Dictionary of Occupational Titles constitutes substantial evidence of Plaintiff's ability to work other jobs. *Id*. (citing *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020)). The VE's testimony, standing alone, constitutes substantial evidence. Accordingly, there is no error here.

**C.    The ALJ did not err in rejecting Dr. Motsch's opinion.**

For disability claims filed prior to March 27, 2017, the ALJ must "[g]enerally[ ]give more weight to medical opinions from [the claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. § 404.1527(c)(2). To reject the uncontradicted opinion of a treating physician "an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal quotations and citations omitted). If the treating physician's opinion is contradicted by another physician, the ALJ must still cite "specific and legitimate reasons that are supported by substantial evidence." *Id*. (internal quotations and citations omitted).[4]

---

[4] The Ninth Circuit has held this standard does not apply to claims filed on or after March 27, 2017, considering the revised standards for evaluating opinion evidence codified in 20 C.F.R. § 404.1520c. *Woods v. Kijakazi*, 32 F.4th 785, 787, 791-92 (9th Cir. 2022). The claims at issue here pre-date the regulatory changes. (AR. at 206-10.)

- 8 -

On November 24, 2014, Plaintiff's treating family doctor, Linda Motsch, M.D. completed an assessment of Plaintiff's physical limitations. (AR. at 577-78.) Marking her responses in a mostly check-box form, she concluded Plaintiff could sit for less than two hours and stand and walk for less than two hours in an eight-hour workday. (AR. at 577.) She opined it would be medically necessary for Plaintiff to alternate positions every 20 minutes, and that Plaintiff could use her hands or engage in various postural maneuvers for less than 20% of the workday. (AR. at 577.) In brief explanatory remarks, she noted Plaintiff's "depression worsens underlying back/neck pain." (AR. at 578.) She also concluded Plaintiff would miss at least six days of work per month. (AR. at 578.)

ALJ Bucci assigned Dr. Motsch's opinion "little weight" in the decision. (AR. at 686.) She first noted that Dr. Motsch listed only a mental health disorder to explain Plaintiff's severe physical limitations, and that Dr. Motsch appeared to rely "quite heavily" on the Plaintiff's subjective report of symptoms. (AR. at 686.) The ALJ further found the opinion to be inconsistent with Dr. Motsch's own findings on examination, such as treatment notes reflecting Plaintiff's healthy appearance and indicating she exhibited no acute distress. (AR. at 686.) The ALJ noted Plaintiff "reported doing well[]" to Dr. Motsch, and that Dr. Motsch did not treat Plaintiff for psychiatric illnesses. (AR. at 686.) Plaintiff argues these reasons are erroneous.

The ALJ's conclusion that Dr. Motsch's opinion is inconsistent with her examination notes is supported by substantial evidence and constitutes a specific, legitimate reason with which to discredit her assessment.[5] *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) ("A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider.") (citations omitted); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("The incongruity between Dr. Nachenberg's Questionnaire responses

---

[5] The Court notes the specific, legitimate standard is applicable here due to the conflict between Dr. Motsch's assigned limitations and those of the consultative examiner, Dr. Brian Briggs, who opined Plaintiff's physical impairments were non-severe. (AR. at 425.)

- 9 -

and her medical records provides an additional specific and legitimate reason for rejecting Dr. Nachenberg's opinion of Tommasetti's limitations."). Plaintiff routinely reported to Dr. Motsch with a healthy appearance, normal gait, and no other noteworthy examination findings. (AR. at 530, 638, 640-41.) On one occasion following a hospitalization the Plaintiff reported pain and numbness radiating from her neck (AR. at 533), but substantial evidence supports the ALJ's conclusion. *Orn*, 495 F.3d at 630 ("Substantial evidence is more than a mere scintilla but less than a preponderance.").

The ALJ was also correct to note that it appeared Dr. Motsch relied upon the Plaintiff's subjective complaints "quite heavily." (AR. at 686.) In a treatment record corresponding to the date the assessment was completed, Dr. Motsch noted, "Paperwork is filled out per pt. hx [history] And will F/U prn[.]" (AR. at 635.) Plaintiff's examination was normal during this visit, but Dr. Motsch noted chronic physical and significant psychiatric symptoms. (AR. at 635.) The ALJ's interpretation of the record that Dr. Motsch relied heavily upon the Plaintiff's reported symptoms is rational, especially when considering that when asked to name the specific impairment giving rise to these significant physical limitations, Dr. Motsch listed Bipolar Mood Disorder. *Thomas*, 278 F.3d at 954 (the ALJ's interpretation of the record, if rational, should be upheld). It is also noteworthy Dr. Motsch indicated that while Plaintiff "has chronic neck and back pain[, ] her disability is actually for her Bipolar D/O." (AR. at 635.) "An ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (internal citations and quotations omitted). Here, the ALJ discredited the Plaintiff's symptom testimony (AR. at 683-85), and the Plaintiff does not challenge this on review. The Court need not address the ALJ's other reasons for rejecting Dr. Motsch. The ALJ cited at least one specific, legitimate reason supported in the record sufficient to discredit the assessment. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[W]e have said that an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'") (citations omitted), superseded on

other grounds as stated in *Adams v. Kijakazi*, No. 21-16413, 2023 WL 1879247, at *1 (9th Cir. Feb. 10, 2023).

**D.     The ALJ did not err in rejecting the opinions of Drs. Hawks and Fierro.**

On May 3, 2013, Plaintiff's prior family practitioner, Dr. Jack Hawks, completed an assessment of Plaintiff's psychiatric limitations wherein he concluded she had moderately-severe or severe limitations in several functional areas. (AR. at 434-35.) Dr. Hawks found, for instance, that Plaintiff suffered severe limitations in her ability to respond appropriately to coworkers or customary work pressures. (AR. at 434.) The assessment form defines a severe limitation as being consistent with off-task behavior "greater than 21% of an 8-hour work day." (AR. at 435.)

On December 10, 2013, Plaintiff's treating physician, Jose M. Fierro, M.D. completed the same assessment. (AR. at 514-15.) Dr. Fierro also concluded Plaintiff suffered from severe limitations in her ability to respond appropriately to coworkers and customary work pressures and moderately-severe limitations in several other areas. (AR. at 514-15.)

The ALJ assigned each of these opinions "little weight" in the same analysis. (AR. at 686.) She characterized the assessments as "vague and imprecise" because the "physicians failed to render specific functional limitations[]" and merely "checked boxes on a form." (AR. at 686.) The ALJ noted Dr. Fierro had seen the Plaintiff on only one occasion before completing the form, and that Dr. Hawks' records reflected improvement with Plaintiff's medication regimen. (AR. at 686.) The ALJ further noted neither physician provided a narrative explanation for their opinions, and the opinions were unsupported by Plaintiff's course of treatment, her mental status examinations, and her statements to providers. (AR. at 686.)

The ALJ's conclusion that Plaintiff's mental status examinations did not support either assessment is a specific, legitimate reason supported by substantial evidence.[6] As the

---

[6] The Court notes the specific, legitimate standard is, again, the appropriate standard here, due to the conflict between these doctors' assigned limitations and the less restrictive limitations assigned by the non-examining reviewers at the initial and reconsideration phases. (AR. at 102, 119.)

- 11 -

ALJ earlier noted, citing to three different exhibits, "[m]ental status examinations found the claimant alert and oriented with clean and neat appearance, good eye contact, intact memory, logical thought process, depressed mood, appropriate affect, fair to good concentration and insight, good judgment and impulse control[.]" (AR. at 684, citations omitted.) A review of the treatment records supports the ALJ's findings. (AR. at 439, 445, 539, 550, 614, 622, 626, 638.) The ALJ may properly reject a treating assessment due to lack of support from the treatment notes. *E.g.*, *Tommasetti*, 533 F.3d at 1041. Therefore, the ALJ did not err.

**E.     The ALJ did not err by failing to consider and discuss the opinions of Dr. Hill and LAC Luna.**

On May 26, 2015, approximately three months after Plaintiff's established disability onset date, psychiatrist Curt Hill, Ph.D. completed a Crisis Response Network eligibility determination for Seriously Mentally Ill ("SMI") status. (AR. at 967-980.) Dr. Hill concluded, based upon the preliminary report of counselor Jenna Luna, that Plaintiff qualified for SMI, which qualifies her for certain state services. (AR. at 967-69.) Of note, Ms. Luna indicated Plaintiff exhibited certain functional criteria for the past 12 months "or for most of the past six months with an expected continued duration of at least six months[.]" (AR. at 976, emphasis in original.) Ms. Luna noted Plaintiff exhibited neglect or disruption of her ability to attend to her own basic needs; that she relied on others for food, clothing, and housing; that she was unable to attend to her own basic hygiene; that frequent thoughts of death or self-harm caused severe disruptions of her daily life; that "[a]ffective disruption causes significant damage to the [Plaintiff's] education, livelihood, career, or personal relationships"; that she has "[m]ajor disruption of role functioning"; and that she is "[u]nable to work, attend school, or meet other developmentally appropriate responsibilities." (AR. at 978.) The ALJ did not discuss this assessment in the decision, and Plaintiff alleges this was error.

The Court disagrees. Disability determinations from other governmental agencies or private entities are not binding on the Social Security Administration, 20 C.F.R. §

404.1504,[7] and the ALJ need only address "significant probative evidence." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (internal quotations and citations omitted). "The Ninth Circuit has never held that an SMI determination is necessarily significant probative evidence. In fact, state findings of disability may be given as much or as little weight as the ALJ deems appropriate." *Corthion v. Colvin*, No. CV-15-00837-PHX-GMS, 2017 WL 68910, at *7 (D. Ariz. Jan. 6, 2017) (unpublished), aff'd sub nom. 757 F. App'x 614, 616 (9th Cir. 2019)[8]; *but see York-Spann v. Astrue*, 400 F. App'x 207, 208 (9th Cir. 2010) (unpublished) (reversing, in part, where the claimant's global assessment of functioning scores and a "diagnosis describing Claimant as 'seriously mentally ill' went unmentioned in the ALJ's decision[,]" and holding, citing *Vincent*, that the ALJ must "'explain why significant probative evidence has been rejected.'") (citations omitted). Plaintiff cites *Ghanim* for the proposition that an ALJ may not ignore a treating physician's opinion merely because it addresses "the ultimate issue of disability." (Pl. Br. at 25, citing 763 F.3d at 1161.)[9]

The Court finds *Corthion* persuasive. ALJ Bucci already evaluated the bulk of the evidence from the relevant period underlying the SMI determination and determined it did not support the disabling limitations assigned by Plaintiff's treating providers or those the Plaintiff described in her symptom testimony. (AR. at 682-87.) Plaintiff's brief appears to concede this point. (Pl. Br. at 26) ("[Dr. Hill and LAC Luna's] opinion was based on a review of treatment notes then in existence.") Plaintiff "[does] not argue the [SMI]

---

[7] This regulation was amended effective March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844, 5864 (Jan. 18, 2017). The current version prohibits the ALJ from "provid[ing] any analysis in [the] determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether [the claimant is] disabled . . . ." *Id.* The regulation further provides, however, that the ALJ "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that [she] receive[s] as evidence in [the] claim . . . ." *Id.* As noted in Section II, however, Plaintiff filed this claim in May 2013, so this version is not applicable. The pre-amendment version merely states disability determinations by other agencies are not binding on the Social Security Administration. 20 C.F.R. § 404.1504 (2016) (amended as stated in 82 FR 5844, 5864 (Jan. 18, 2017).).

[8] The Court has found no subsequent, intervening authority to the contrary.

[9] *But see* 20 C.F.R. § 404.1527(d) (an opinion on the dispositive issue is not a medical opinion.).

1 determination identified any particular symptoms or limitations that the ALJ neglected to discuss that would affect her ultimate nondisability determination." *Corthion*, 757 F. App'x at 616. Considering that the ALJ addressed and summarized most of the same treatment notes these providers relied upon, that the SMI determination was issued during a period Plaintiff was already adjudged to be disabled, that the SMI determination accounted for Plaintiff's March 2015 psychiatric hospitalization which, again, occurred during the period of disability (AR. at 968), that the SMI determination is non-binding on the administration, and that the SMI determination does not include any specific functional limitations or restrictions the ALJ did not otherwise address in her discussion of the opinion evidence and Plaintiff's symptom testimony, the Court finds the SMI determination is not significant, probative evidence in this case. Accordingly, the ALJ did not err by failing to discuss it.

**F.    The ALJ did not err by rejecting the opinions of the non-examining doctors.**

"[A]n ALJ 'may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.'" *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).). In the decision, the ALJ assigned "some weight" to the non-examining physicians, noting that "the limitation to avoid all public contact and only occasional interaction with supervisors is not supported." (AR. at 685.) Plaintiff argues the ALJ offered only a mere conclusion and did not cite specific evidence or provide a specific rationale that would satisfy the *Sousa* standard. (Pl. Br. at 27.) The ALJ further explained, however, "[t]he undersigned does acknowledge that the claimant's mental impairments were evaluated using the B criteria set forth in a previous version of the mental listings. Therefore, the undersigned has addressed these opinions within the context of the updated listings." (AR. at 685.) In her discussion of the B criteria, the ALJ assigned a "moderate limitation" in two categories and "mild limitation" in two others. (AR. at 681-82.) Noting Plaintiff's ability to interact with others was only moderately limited, the ALJ cited Plaintiff's ability to maintain good eye contact during examinations and "maintain[] fairly good relationships with family

members and[ ]a few friends (Exhibit 19F)." (AR. at 681.) In Exhibit 19F (AR. at 648-57), which the ALJ cited, Plaintiff described her relationships with family as "fairly good[,]" and noted she had "not many but decent[]" friendships. (AR.at 650.) The ALJ's decision to reject aspects of the non-examining doctors' opinions is supported by reference to specific evidence in the medical record. *Farlow*, 53 F.4th at 488. Accordingly, the ALJ did not err.

**IT IS ORDERED** that the December 3, 2019 decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and terminate this action.

Dated this 28th day of September, 2023.

Honorable Steven P. Logan
United States District Judge